Our final case on the morning docket, People v. Carter Tucker 5-24-0586. Helen, if you're ready to proceed, please step forward, identify yourself for the record, and you may do so. Matthew Kralovic Good morning. May it please the court, counsel. I'm Matthew Kralovic, and I represent Janelle Carter Tucker in this appeal. This case is about a family feud between Janelle and her aunt Markita. Leading up to this incident, Markita's family sent Janelle the most vile messages a mother could receive. They told her they mocked the death of her infant child. They told her to go dig up her dead-ass baby. They called her an ugly, gremlin mother-at-earth with a devil snatched from this earth because she was so ugly. And that wasn't all. They also circulated a nude photo of Janelle, mocked her genitalia, accused her and her family of sex working. Janelle is a lifelong sexual abuse survivor. At age 6, she was molested by a family member. At age 13, she was raped. After that, she's been hospitalized at least three times for mental health struggles, including suicidal behavior. Considering everything about Janelle, she did not deserve an 18-year prison sentence. So we ask this court to remand her re-sexing. Now, Janelle's appeal challenged three sexing factors, one aggravating factor and two mitigating factors. I'm going to start the argument today by focusing on issue three, which is the aggravating factor for committing this offense while on pretrial release for another offense. I start with this issue because the state conceded that this aggravating factor should not have applied. And this court can reverse for this issue alone. So this aggravating factor only applied if the defendant was convicted of that prior offense for which they were on pretrial release. As the state concedes here, that did not apply because Janelle was never convicted of that offense. So the real issue remaining for issue number three is whether this was plain error or ineffective assistance to counsel. And here, this case exemplifies a first-pronged plain error in the sentencing context because the court specifically relied on this aggravating factor while also specifically stating that the evidence was closely balanced at sentencing. So during the state's argument, they specifically pointed to this aggravating factor and asked the court to apply it. And then throughout their argument, they continued to refer back to Janelle's pretrial release status for that case. And the court agreed. It specifically applied this aggravating factor by statute. And similar to the state, it referred to her pretrial release status when explaining why Janelle should be punished harsher. So we know that the court specifically relied on this aggravating factor. That did not apply. And the court also stated that the evidence was closely balanced. And I'll specifically point this court's attention to the transcript page on 167. Because right before the court issues its 18-year sentence, it points to the state's aggravating evidence. And it said, looking at this evidence, this evidence, quote, would certainly justify the sentence in the range that the state's attorney suggested. The very next sentence, it sums up Janelle's mitigating evidence and then says, quote, certainly, that this evidence would, quote, certainly tend to support the sentence closer to the minimum as argued by her trial counsel. So this shows that the evidence at sentencing is closely balanced. On the one hand, the aggravating evidence supports what the state wants. On the mitigating end, it supports Janelle's recommended sentence. So the court is trying to balance the mitigating and aggravating evidence. And while doing so, it mistakenly believes that this aggravating factor applies and is supporting the state's side. So at this point, we know that the court specifically relied on a factor that did not apply in the closely balanced case. So the proper recourse is to send this case back to the trial court because the trial court is in the best position to determine how much this aggravating factor did impact its sentence. Now, to briefly discuss the state's argument to this issue, the state claims that the court could consider her pretrial release status as part of a broader context of her prior criminal history. But that is directly covered by the express words in the statute. Her pretrial release and her misconduct on pretrial release only applies if she were convicted for that prior offense and it was a felony. This was the balance that our legislators struck when determining when misconduct on pretrial release can aggravate a sentence, and this was the rule they came up with. So if they were just allowed to generally consider her misconduct on pretrial release for some broader criminal history, there's no reason to enact a statute, which would serve no purpose. But this court need not address that aspect of this issue because at the end of the day, this court still thought that this statutory aggravating factor applied. It specifically pointed to this factor while stating that the evidence is closely balanced. So even if they considered her broader context, it's still incorrectly believing that her pretrial release status had this added significance as an aggravating factor impacting its sentence. So we ask the court for this issue to remand or re-sentence it. Now turning to issue one, the trial court did correctly find that there were strong provoking acts in this case. Not only did they mock the death of her child, insult her sexual health, her family, circulate a nude photo. These were all strongly provoking acts, and the trial court even said that this would provoke the calmest person to seek revenge. Now the problem here is that when the court then diminished the value of this provoking provocation evidence by focusing on the need to deter future provocations and the way that Janelle would respond to future acts in the future. And that directly violates Calhoun. In Calhoun, the court also found strong provoking evidence, and yet the court still punished and sought to deter vigilante justice. And that was narrowed because it diminishes the fact that this provoking evidence provoked the defendant to act in that situation, and it's unlikely to recur here. And here, Janelle was the victim of crimes herself. These provoking acts arguably constituted disorderly conduct, cyber-stalking, harassment, and also circulating a private sexual image without her consent. The state does not dispute that these were illegal acts that she was subjected to. The court cannot presume that Marquis' side or her family are going to commit more future crimes, specifically targeting Janelle, right, for there to be some risk that she would respond in a similar way. The court's got to presume that people will follow the law, not commit crimes, and Janelle should not be more harshly punished because her side of the family may target her again for future crimes. And it's also important to note that these provoking acts also must be considered with Janelle's mental health struggles, which we discuss in Issue 3. So after Janelle lost her baby, she was diagnosed with PTSD. And as the state points out in their brief, when Janelle was about 13, she got diagnosed with mood disorders and also impulse control, which also happens to be the time that she told hospital workers that she was raped, so it corresponds with this past trauma that she was experiencing. Now, these provoking acts specifically inflicted her mental illnesses, her PTSD, her struggles with losing her baby, her abilities to think and behave according to the law, which is specifically covered by the mitigating factor. I do want to point the court's attention to the very last part. The mental illness substantially affected her ability to understand the nature of her acts, her form, her conduct to the requirements of law, which is exactly what impulse control evidence and the mood disorder shows. I would also like to point out that the state pointed to a few cases where a court can consider mental health struggles as a double-edged sword. But those two cases that the state cited were from 1997 and 2006, which is 10 years before this mental health mitigating factor was enacted. Currently, the way that the aggravating and mitigating factors are set up, mental health issues are only a mitigating factor. It is not an aggravating factor. So to find that her mental health illnesses, the court, similar to Hyder, cannot just have a general broad belief that mental health is both aggravating and mitigating. That's to specifically point to why something about her mental health struggles is causing her to be a future risk. I notice my time has expired. I will save all questions for later. I want to go back to your first issue about the improper consideration. I'm not so clear that the state concedes this. Are you saying that the state concedes this issue? Because it seems they argue that the court considered this on a more broad basis. So the state conceded by the plain words that the aggravating factor did not apply, right? They agree that that factor only applies if the prior offense was a felony that she was convicted for. They agree to that concept? Yes, yes. Okay, they've gone that far? Yes. I just don't get to your section where you say they concede your issue. They concede that the factor did not apply. They don't contest it. That wasn't appropriate for the trial court to consider or apply to her facts. They do argue, again, that they could use it for a broader general criminal misconduct, but they've got good reasons to say before, against the express words of the statute. So you don't think that the trial court could have considered it for broader criminal conduct? No. The whole reason for why this is an aggravating factor is because when people commit crimes on bond, right, it shows that they are not going to obey court orders. They have more disregard for the rule of law. That's the whole reason why you're going to aggravate a sentence because they committed a crime on bond. The legislature understood this, and yet they still specifically chose to only allow that when that prior offense is a felony offense for which there was conviction. And if they could just consider it broadly, there would be no purpose. Because any time that someone's arrested or accused of misconduct, they're going to have a bond or a pretrial release. This would apply in every situation if the state's reading were correct. Okay, thank you very much. Thank you. Thank you, counsel. We've given time for rebuttal. I believe you may proceed. Please identify yourself for the record when you're ready. Good morning, your honors, counsel, and may it please the court. My name is Valerie Osment O'Brien, and I represent the state in this matter, the people of the state of Illinois, versus Janelle D. Carter-Tucker. Opposing counsel wants to paint this case as if the sentencing judge below flipped the law on its head. However, the record tells a very different story. The following is an overview of the state's arguments to follow. Here, the defendant's 18-year sentence fell right at the midpoint of the applicable 6- to 30-year statutory range for the Class X felony of aggravated battery with a firearm. Furthermore, contrary to the defendant's contentions, the trial court properly considered and weighed the three factors cited by the defendant. First, while acknowledging that strong provocation arriving from the social media posts, the court reasonably concluded that this would not justify the defendant's extreme response. Second, the court appropriately viewed her mental health history as both mitigating and aggravating based on her pattern of violent behavior despite a history of treatment. And third, the court properly considered her commission of the offense while on bond for her attack on Thatch as relevant with respect to her past criminal history and likelihood of recidivism. Regardless of the case's ultimate... So, Ms. O'Brien, to follow up with my question that I just asked your opponent, the state is not conceding that there was an inappropriate consideration of the offense while on bond? No, the state does not concede that it was inappropriate for the trial court to consider that as aggravating. And why not, since there was no conviction? So, let us not forget, Your Honor, that the SAFE Act is relatively new, and there probably isn't any Supreme Court precedent yet on whether or not what happens in the situation of being on pretrial release. And then, let us also not forget that that case was dismissed as part of the plea deal in this matter. So, it's kind of an interesting situation to begin with, considering the context of the charge itself and it being dismissed as part of this plea deal. But, and let us not forget, the defendant failed to preserve this issue for review, so she only prevails if she can prove, first of all, pronged, plain error. At sentencing, the state did argue, may or may not have been wrong, that the fact that the instant offense occurred while the defendant was on pretrial release for her attack on theft was a statutory factor in aggravation. However, the state also emphasized that the defendant's commission of the instant offense while on pretrial release was part of a larger pattern of criminal behavior, contending that the shooting at Blount was not an impulsive one-off, but rather the act of someone who has several prior violent offenses, as Your Honor pointed out earlier. The state further contended that the defendant's conduct was not the result of circumstances unlikely to reoccur, noting that the defendant has repeatedly been given community-based sentences with anger management, and that apparently has had no effect, and that the defendant was on bond for a violent offense when this happened, and yet the conduct happens over and over and over again. And finally, the state pointed to the defendant's commission of the instant offense while on bond as evidence that her mental health issues were more aggravating than mitigating, arguing that she continues to engage in this pattern of violence even while on bond, despite having completed anger management and parenting. So this is evidence that the state argued and the trial court considered this as the broader context as a whole instead of focusing on just the aggravating factor of it. And when addressing the applicable statutory factors in aggravation, the sentencing court did note that the defendant was on pretrial release for the maud action case when this occurred, and that is another factor in aggravation. But it also considered the defendant's pretrial release status within the broader context, and explaining why the defendant's conduct was not the result of circumstances unlikely to reoccur, the court described the attack on Thatch in detail, characterizing it as just the most senseless kind of mob violence that the court can imagine. And this conclusion is supported by case law in People v. I believe it's Caesar, 2007 case, where the appellate court held that even if the trial court had improperly considered a charge that the defendant was never convicted of as an aggravating factor, there was no error, because in aggravation, the trial court may consider evidence of a defendant's prior misconduct, even though that misconduct may not have resulted in prosecution or a conviction. As to the first point, the defendant argues that the trial court abused its discretion, because while recognizing that she acted under a strong provocation arising from the social media posts disparaging the death of her child, the court failed to consider this as a factor in mitigation, and instead found that the violent nature of her response was an aggravating factor. She asserts that a sentencing court must mitigate a defendant's sentence when he or she acts under strong provocation, even if the response is violent or brutal, because such a defendant is, I guess, less culpable than the one who acts without provocation. The defendant's argument, and this court should find, is unpersuasive. The Unified Code of Corrections lists various factors in mitigation. One of those is if the defendant acted under a strong provocation. The Unified Code provides that it is mitigating if there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. And while strong provocation as a mitigating factor at sentencing encompasses a wide range of conduct than the term serious provocation for the purposes of second-degree murder, the provocation must nonetheless be direct and immediate. Here, although the sentencing court did conclude that the defendant did act under strong provocation, the court reasonably concluded that such provocation certainly did not rise to the level of excusing or justifying the defendant's violent behavior. The trial court's focus on the defendant's actions in response to the provocation did not constitute improper aggravation. It provided context for why the sentencing court believed her conduct was not excusable nor justified. The court's determination that the defendant's response was likely to lead to further violence was also reasonable given the escalating nature of the conflict with the Blount side of the family. Let's be honest, this probably wasn't going to end until someone or multiple people passed away. The defendant's overall history of violent behavior further supported the court's conclusion that future provocations would likely trigger similar aggressive reactions from the defendant. The defendant wants to rely on people versus Calhoun, but that's completely misplaced. In Calhoun, the defendant there claimed that the mitigating factor of strong provocation was inadequately considered by the trial court because the defendant killed the victim shortly after learning he had apparently raped her infant daughter. The appellate court found that the trial court improperly focused on the need to punish the defendant's vigilantism rather than considering the undeniably egregious nature of the provocation. The appellate court noted that the trial court did not adequately consider the fact that, given the extremely provocative circumstances and the defendant's minimal criminal history, she posed a low risk of committing similar crimes in the future. That is not the facts of this case, Your Honors. In Calhoun, the defendant was operating under the belief that the victim had sexually assaulted her one-year-old daughter and killed the victim within hours of learning of the alleged abuse. Here, in stark contrast, the provocation involved a social media post disparaging the death of the defendant's child, which had occurred eight years earlier. Not only was the provocation itself of a vastly different character than the rape of an infant, but the defendant's response occurred several days after the provocation. It was not immediate, direct, or instant. The defendant herself engaged in similar mocking behavior, let's not forget, toward the victim's family on social media, indicating an ongoing cycle of conflict rather than a singular, unusual incident of provocation. And unlike the defendant in Calhoun, the defendant in this case has an extensive criminal history, indicating a predisposition to react aggressively to perceived slights. In essence, strong provocation might explain a crime, but it doesn't excuse it, and it does not erase the court's duty to protect the public. As to the defendant's second point, where she contends that the sentencing court erred in treating her history of mental illness as both a factor in mitigation and aggravation, she argues that while the court acknowledged her traumatic background and mental health issues as partially mitigated, it also improperly speculated that her mental health problems made her more likely to pose a future threat to the public, treating them as aggravated, without specific evidence to support that conclusion. The defendant further argues that a court may only consider mental illness as an aggravating factor if there is specific evidence demonstrating that the defendant's mental health renders them a future danger to the public. And here, the defendant's argument is meritless on several grounds. The defendant's claim that the legislature intended to categorically punish those with mental illness less severely is not supported by the plain language of the statute at all. Contrary to the defendant's broad assertion, the Unified Code does not mandate that mental illness, standing alone, must be considered as mitigating. Rather, it provides that mental illness is necessarily mitigating only if the defendant was suffering from a serious mental illness which substantially affected her ability to understand the nature of her actions or to conform her conduct to the requirements of the law. Here, there is no evidence in the record to suggest that the defendant's mental health issues impaired her ability to understand or control her actions and lead to the multiple charges in this case. And the Supreme Court has recognized that information about a defendant's mental or psychological impairment is not inherently mitigating. Rather, a sentencing judge might view the information as either mitigating or aggravating depending, of course, on whether the individual hearing the evidence finds that it evokes compassion or demonstrates possible future dangerousness. That's exactly what occurred in this case, Your Honors. The PSI detailed the defendant's extensive history of court-ordered services and treatment aimed at addressing her mental health struggles and anger management issues which were often triggered by her own involvement in the criminal justice system. The history combined with the violent and impulsive nature of the defendant's offense provided ample support for the sentencing court's conclusion that the defendant's longstanding mental health issues and difficulty regulating her emotions made her more likely to act out aggressively in the future. And for these reasons, the State respectfully requests for this Court to affirm the defendant's sentence. Any final questions? Thank you, Counsel. Rebecca? Thank you. So there's a couple of points that I do want to address. So first off, addressing the provocation. Now, counsel in the State has said that these provocating acts, the Court properly considered it because it didn't find that it rose up to the level to excuse or justify her actions. But the State is actually referring to a different mitigating factor. That's a separate mitigating factor than the provocation. There are two similar ones. There's the provocation one where there's strong provocation. It's a mitigating factor. And a second one where it's not provocation, but there's a reason to excuse or justify her actions that don't rise to a legal defense at trial, but they're still worth considering. So when the Court's mentioning that we're not going to excuse her acts or justify her actions or provocation, that's a separate mitigating factor than the provoking acts. And I just wanted to clarify. So the State's position, they conceded that it was this fact that didn't apply. On page 18 of their brief, direct quote, therefore, the defendant is correct that this specific statutory aggravating factor did not apply to her because the mom action case for which she was on pretrial release at the time did not ultimately result in a conviction. So this specific aggravating factor was, again, cited by the trial court when it's issuing its sentence. And her pretrial release status, right, has added significance after the State argued that it was an aggravating factor. Each time the Court's considering the fact that she was on pretrial release, it is thinking that it is a specific aggravating factor that applies, which it does not. Now, the State did mention this Caesar case, and it did point out that there wasn't an error there when the Court mistakenly believed that there was a prior conviction. The prior misconduct is not the issue. There's a difference between the misconduct and aggravating her sentence because she did it while on pretrial release, right? The pretrial release is separate from her conduct underlying those prior offenses. We don't have any issue with the Court considering her prior misconduct or prior acts during those offenses, right, when thinking about her general criminal history and her likelihood to reoffend. But the problem here is that she, the Court, specifically relied on this pretrial release status, right? And our legislator said that this aggravating factor only applies in a certain situation. And also to clarify, this pretrial release status aggravating factor has been around in some forms since about the 1980s, so it's not a newly enacted statute. It has been around for a long time. And the reason why there's not a lot of cases discussing it on appeal is because it's a very plain-worded statute. It's not very confusing. It only applies if she was convicted of that prior offense. So there's not a lot of cases discussing it, even though it's been around for about 30, 40 years, because it's so well understood. And you're still stuck at first-prime plain error? Yes, first-prime plain error, yeah, first-prime plain error and infectiousness. Tell me how this is closely balanced again. Because even though that Janelle, the actions that she was accused of, the actions she pled guilty to were horrible, her background and the trauma that she experienced was equally as horrible. To the trial court, we know that expressly. On page 167, it said, we're just looking at the mitigating evidence. It supports the sentence towards the minimum, right, as the defense counsel argued. But the aggravating evidence, which included this improper factor, supported a higher one that the state was seeking. And what the court did was it tried to balance it, and it decided some point in the middle. But that middle point is assuming that this aggravated factor was supporting the state's argument and supporting that she should have a harsher sentence. So if the court did not apply that factor, if it looked at it cleanly, right, when the court is trying to decide where to censor between these two ends of the spectrum, that spectrum is going to be closer to the minimum. But wouldn't we always have, under your explanation, closely balanced evidence, where you have the state arguing for one sentence and the defendant arguing for another? I mean, the court is always in the position of having to decide the middle. The court is always in the position of deciding and balancing correct. But there are many cases and many times a court will express whether it thinks that the evidence is truly balanced. If there's a lot of aggravating one and there's not a lot of mitigating evidence, that's going to show up in the record. Even though it's considering and the trial court's considering balancing, aggravating, and mitigating every time, it's not always going to find that this mitigating evidence is on equal par with the aggravating, as the court did in this case. And did the court say it's closely balanced? Just got as close as you can get without saying closely balanced. Yeah. Okay. All right. Thank you, counsel. In your arguments, we will take this matter under advisement and issue a ruling in due course.